## ART BUILDERS PROFIT SHARING PLAN, et al.

v.

### Arthur G. BOSELY, et al.

### Civ. Nos. JFM–85–2211, JFM–85–2187.

United States District Court,
D. Maryland.

June 6, 1986.

---

Frank F. Hertsch, Bel Air, Md., Sidney Leech, Semmes, Bowen & Semmes, Baltimore, Md., for Art Builders.

John A. MacColl, Piper & Marbury, Baltimore, Md., for First Nat.

Benjamin Rosenberg, Venable, Baetjer & Howard, Baltimore, Md., for all defendants except Catherine Eileen Bosely.

Cecilia Januszkiewicz, Nathan Braverman, Baltimore, Md., for Catherine Eileen Bosely.

### MEMORANDUM

MOTZ, District Judge.

These consolidated cases were brought to determine the respective rights of the children and the widow of Melvin G. Bosely to benefits due from the Art Builders Profit Sharing Plan upon Mr. Bosely's death. Bosely's children commenced Civil No. 85–2187 against the Plan and its administrator to prohibit any distributions from the Plan to Mrs. Bosely. Thereafter, the Plan instituted Civil No. 85–2211 as an interpleader action naming the children and Mrs. Bosely as defendants and requesting that their respective rights be determined.[1]

Mr. Bosely, together with his partner, R. Walter Ward, founded Art Builders, Inc. in 1955. In 1961 the company adopted the Plan for certain of its employees, including Bosely and Ward themselves. The Plan is subject to the provisions of Employee Re-

---

1. First National Bank of Maryland, the trustee of the Plan, has intervened as a plaintiff in the declaratory judgment action. The parties are agreed that no relief is proper against First National except as may be necessary to effect their respective rights as ultimately declared.

tirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. 1001 *et seq.* In November 1979, Mr. Bosely designated his children as his beneficiaries under the Plan. He had married Mrs. Bosely approximately six months before. He never changed his beneficiary designation, and according to Mrs. Bosely's deposition testimony, she was not aware of Mr. Bosely's interest in the Plan until after his death. Mr. Bosely died on January 8, 1985 at the age of fifty-four.

On August 23, 1984, approximately four and a half months prior to Mr. Bosely's death, the Retirement Equity Act of 1984, Pub.L. No. 98-397, 98 Stat. 1426 (1984), became effective. That Act provided that in the event a vested participant in an employee benefit plan dies before retirement, the plan must provide a "qualified pre-retirement survivor annuity." 29 U.S.C. Section 1055(a)(2). Such an annuity is defined (in the case of a defined contribution plan such as the Art Builder's Plan) as "an annuity for the life of the surviving spouse, the actuarial equivalent of which is not less than fifty percent (50%) of the account balance of the participant as of the date of death." 29 U.S.C. Section 1055(e)(2). The annuity is automatic unless the participant elects to waive pre-retirement survivor annuity coverage and the participant's spouse consents in writing to the election. 29 U.S.C. Section 1055(c)(1). Mr. Bosely never made such an election, and Mrs. Bosely never signed such a consent.

The provisions of the Retirement Equity Act relating to the pre-retirement survivor annuity generally were effective for Plan years beginning after December 31, 1984. The Art Builders Plan year begins on November 1st. However, the Retirement Equity Act contained "transitional rules," applicable to persons like Mr. Bosely who died after August 23, 1984, and before the first day of the first Plan year to which the amendments made by the Act applied. These rules provided that the amendments "shall be treated as in effect as of the time of such participant's death." Pub.L. No.

98-397, Title III, Section 303(c), 98 Stat. 1451 (1984).

Under the provisions of the Plan the administrator is to direct the trustee to distribute the amount due to the participant's beneficiaries on the first day of the month after the "determination" of the participant's death. Because conflicting claims were filed, the administrator did not segregate Mr. Bosely's account balance for distribution until March 8, 1985, although he had been promptly notified of Mr. Bosely's death. When the administrator did segregate the funds for distribution, he used as the valuation date for the account balance October 31, 1984—the annual valuation date of the Plan under its provisions—rather than February 1, 1985—the date on which the Plan called for distribution of the account balance to Mr. Bosely's beneficiaries.

Six questions are presented:

(1) Is Mrs. Bosely, to the exclusion of the children, entitled to receive 100% of Mr. Bosely's account balance?

(2) Is Mrs. Bosely, alternatively, entitled to receive a qualified pre-retirement survivor annuity?

(3) If Mrs. Bosely is entitled to receive a qualified pre-retirement survivor annuity, is the annuity to be paid out of Mr. Bosely's account balance or out of all of the assets of the Plan?

(4) Should the benefits payable to the children and/or Mrs. Bosely be valued as of October 31, 1984 (the annual valuation date of the Plan) or February 1, 1985 (the scheduled date for distribution)?

(5) Is the Plan liable for interest between February 1, 1985 and March 8, 1985 because of its failure to segregate the account balance for distribution on the date required by the Plan?

(6) Is the Plan entitled to recover its costs and attorney's fees incurred in these proceedings?

The Plan and Mrs. Bosely have moved for summary judgment. The children have not moved for summary judgment but the

parties are agreed that all the issues are ripe for final resolution.

## I.

■ Mrs. Bosely first argues that Mr. Bosely's designation of his children as beneficiaries in 1979 was nullified by the enactment of the Retirement Equity Act because that Act requires the consent of the participant's spouse in order for a designation of any beneficiary other than the spouse to be effective. This argument is without merit. Nothing in the Act requires spousal consent to the designation of a beneficiary. All that the Act provides is that unless the spouse files a written consent not to take the pre-retirement survivor annuity, such an annuity shall be paid. There is no indication in the language of the Act or in its legislative history to demonstrate that Congress intended the absence of spousal consent to render ineffective the designation of beneficiaries other than spouses, particularly designations which were made prior to the adoption of the Act. S.Rep. No. 575, 98th Cong. 2d Sess. 12, (August 6, 1984), U.S.Code Cong. & Admin.News 1984, pp. 2547, 2558.

## II.

Mrs. Bosely argues next that if she is not entitled to 100% of Mr. Bosely's interest in the Plan, she is entitled to a pre-retirement survivor annuity. This contention is based upon the express language of the Retirement Equity Act and the transitional rules. Those make clear that Congress intended that (1) unless a spouse files a written consent waiving his or her rights, he or she is to receive the survivor annuity; and (2) this rule was to go into effect immediately even though plans were not required to adopt amendments to reflect the provisions of the Act until the beginning of their Plan years starting after December 31, 1984. Pub.L. No. 98–397, Title III, Section 303(c)(2).

The children assert three responses to Mrs. Bosely's claim.

First, they contend that she is not a beneficiary and therefore lacks standing to bring an action under the Retirement Equity Act or the other provisions of ERISA. This reasoning begs the question: if Mrs. Bosely is a beneficiary, as she asserts, then she does have standing.

Second, the children contend that the transitional rules are unconstitutional because they have the effect of changing Mr. Bosely's designation of beneficiaries. The short answer to this contention is that the children's rights as beneficiaries were not vested either under the provisions of the Plan [2] or under the law. *See, e.g., Kucera v. Metropolitan Life Ins. Co.,* 719 F.2d 678, 680 (3rd Cir.1983).

Third, the children seem to suggest that the combined effect of the enactment of the transitional rules and the fortuity that Mr. Bosely died during the transitional period was not to confer upon Mrs. Bosely the right to receive a pre-retirement survivor annuity but to cause the Plan to lose its tax favored status. This contention makes little sense. The Plan was under no obligation to amend the Plan during the transition period; the very purpose of the transitional rules was to confer the right to a survivors' annuity upon a participant's spouse without requiring plan amendment. Clearly, the Plan should not be penalized for something both beyond its control and its responsibility.

## III.

■ Mrs. Bosely is therefore entitled to receive a pre-retirement survivor annuity. The question next becomes whether that annuity is to be paid out of Mr. Bosely's account balance or out of the assets of the Plan in their entirety. The Retirement Equity Act does not expressly address this issue. Indeed, Congress has recognized the uncertainty on this point and proposed legislation, Retirement Equity Technical

---

**2.** Under the terms of the Plan a designated beneficiary's rights may be terminated by the designation of a new beneficiary by the participant

(Section 6.4(c)), the amending of the Plan by Art Builders (Second 10.1) or a change in the governing law (Section 12.4).

Corrections Act of 1986, H.R. 2110, 99th Cong. 2d Sess. (1985), which does expressly provide that "the amount of any benefit to be paid to any designated beneficiary shall be reduced by the amount payable to his surviving spouse as an annuity."

The children argue that the new legislation modifies the existing law. The Plan argues that it simply clarifies it. The Plan's position is the correct one. The fundamental concept of the Plan is that a participant's beneficiaries are to be paid benefits based upon contributions made to the Plan by or on behalf of the participant. Both the Plan, see sections 5.2, 5.3 and 5.4, and ERISA itself, see 29 U.S.C. Section 1002(34), so mandate. Nothing in the Retirement Equity Act suggests the extraordinary result that some participants should contribute toward the payment of benefits to the beneficiaries of other participants. To the contrary, the Act states that the pre-retirement survivor annuity is to be in an amount not less than "fifty percent of *the Participant's account balance.*" Given the purpose and structure of benefit plans, it seems clear that this language is intended not merely to define the extent, but also to designate the source, of the annuity.

### IV.

■ Both the children and Mrs. Bosely contend that the date which the Plan should have used to value Mr. Bosely's account balance is February 1, 1985—the appointed date of distribution under the Plan. They reason that equity requires that a participant's beneficiaries be credited with income which has been earned between the last annual valuation date of the Plan and the date of distribution. They note that Mr. Bosely and his partner, Mr. Ward, were the largest participants in the Plan and that the effect of not crediting Mr. Bosely's account with accrued interim income is to provide a windfall to Mr. Ward.

The inequity to which the children and Mrs. Bosely point unquestionably exists. However, the law requires that the Plan apply its provisions uniformly and in a non-discriminatory manner as to all participants. Treas.Reg. Section 1.401–4(a)(1)(i); Rev.Rul. 80–155, 1980–1 c.b. 84. Section 5.4(a) of the Plan provides that account balances are to be measured as of the "valuation date" which is defined as "the last day of each Plan Year," and, although as the children argue this provision does not necessarily prevent valuations from being made as of other dates, it has been interpreted under past practice to mean that the account balances of participants leaving the Plan are to be measured as of the last day of the Plan year next preceding their withdrawal. In light of this history, the Plan would be acting improperly were it to pick a new valuation date for the purpose of the distribution to be made to Mr. Bosely's beneficiaries.

### V.

■ The children and Mrs. Bosely also contend that the Plan is liable for interest between February 1, 1985 (the distribution date under the Plan) and March 8, 1985 (the date on which distribution was actually made). This contention has merit. There is no question that under the terms of the Plan the administrator should have segregated Mr. Bosely's account balance for distribution on February 1, 1985. The Plan's only excuse for not having done so is that competing claims were being asserted by the children and Mrs. Bosely at that time. However, nothing prevented the account balance from being segregated from the remainder of the Plan and under traditional equitable principles, the Plan, as a fiduciary, is liable for income lost as a consequence of its failure to segregate the funds as required. *See, e.g., 2 Scott on Trusts,* (3rd Ed. 1967); *Blankenship v. Boyle,* 329 F.Supp. 1089 (D.D.C.1971).

### VI.

The Plan's request for payment of its costs and attorney's fees in these proceedings will be denied. The Plan has been not merely a stakeholder in this litigation but is itself financially interested in the resolution

of at least three of the issues: the source of the payment of Mrs. Bosely's annuity, the choice of the proper valuation date and the payment of interest from February 1, 1985 to March 8, 1985.

A separate order is being entered herewith effecting the rulings made in this memorandum.

## ORDER

For the reasons stated in the memorandum entered herein, it is this 6th day of June 1986

### ORDERED

1. The motion for summary judgment of the First National Bank of Maryland is granted;

2. The motion for summary judgment of Art Builders Profit Sharing Plan and the motion for partial summary judgment of Catherine Eileen Bosely are each granted in part and denied in part as set forth more particularly herein;

3. The respective rights of Catherine Eileen Bosely and Arthur G. Bosely, Helen L. Bosely, Caroline F. Bosely and Lorraine K. Bosely ("the children") to the account balance of Melvin G. Bosely in the Plan as of the time of his death are declared to be as follows:

(a) Catherine Eileen Bosely is entitled to a qualified pre-retirement survivor annuity under the Retirement Equity Act of 1984 and the transitional rules adopted therewith, which annuity is to be paid out of Mr. Bosely's account balance;

(b) The children as Mr. Bosely's designated beneficiaries are entitled to the remainder of the account balance;

4. Mr. Bosely's account balance shall be valued for distribution purposes as of October 31, 1984;

5. The Plan is liable to Catherine Eileen Bosely and to the children for interest on the account balance from February 1, 1985 to March 8, 1985;

6. The Plan's request for payment of its costs and attorney's fees in these proceedings is denied; and

7. This order shall constitute a final judgment declaring the rights of the parties.