Irma **BUCHNER**, Plaintiff,

v.

**BUCHNER BROTHERS PLUMBING AND HEATING COMPANY, a Partnership, Sponsor of the Buchner Brothers Self–Employed Retirement Plan, Buchner Brothers Self–Employed Retirement Plan, and William R. Buchner as Trustee and Plan administrator of the Buchner Brothers Self–Employed Retirement Plan, Defendants.**

No. 88–C–471–S.

United States District Court,
W.D. Wisconsin.

Nov. 17, 1988.

Patricia M. Heim, Parke, O'Flaherty, Ablan & Heim, La Crosse, Wis., for plaintiff.

William J. Sauer, Sauer, Becker, Flanagan & Lynch, La Crosse, Wis., for defendants.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Before the Court are the motions of plaintiff and defendants for summary judgment in this action arising under the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* Jurisdiction is asserted pursuant to 29 U.S.C. § 1132(e)(1).

Plaintiff alleges three counts of breach of fiduciary duty and denial of benefits under ERISA, 29 U.S.C. §§ 1109 and 1132.

On a motion for summary judgment the question is whether any genuine issue of material fact remains following the submission by both parties of affidavits and other supporting materials and, if not, whether the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure.

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. An adverse party may not rest upon the mere allegations or denials of the pleading, but the response must set forth specific facts showing there is a genuine issue for trial. *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

There is no issue for trial unless there is sufficient evidence favoring the non-moving party that a jury would return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## FACTS

The facts in this case are almost wholly undisputed. Defendants failed to respond to those proposed findings of fact submitted by plaintiff but supply findings of fact in support of their motion. The following facts will be accepted as true for purposes of summary judgment:

Defendant Buchner Brothers Plumbing and Heating Target Benefit Pension Plan ("Plan") is a tax exempt qualified plan under the Internal Revenue Code.

The sponsor of the Buchner Brothers Self–Employed Retirement Plan is defendant Buchner Brothers Plumbing and Heating Company.

The Trustee and Plan Administrator of the Buchner Brothers Plumbing and Heating Target Benefit Pension Plan is defendant William R. Buchner.

The last amendments to the Buchner Brothers Self–Employed Retirement Plan were made effective retroactive to January 1984.

The purpose of those amendments was to comply with various tax provisions enacted by Congress, including the Retirement Equity Act of 1984.

The amendments which were made effective January 1, 1984 were prepared by McPhail Associates, Inc., of Appleton, Wisconsin, a retirement plan consulting firm.

A representative of McPhail Associates, Inc., Phillip Dumke, visited Buchner Brothers Plumbing and Heating Company in La Crosse, Wisconsin on January 7, 1985 and February 21, 1985 to discuss the amendments to the plan.

At those meetings the requirement of a pre-retirement survivor annuity was discussed.

The representative of Buchner Brothers Plumbing and Heating with whom these amendments were discussed was Gerald Buchner.

The Plan presented to and discussed with Gerald Buchner in February 1985 was adopted by Buchner Brothers Plumbing

and Heating Company without any change or alteration.

The agreement adopting the amended plan and related Internal Revenue Service forms were signed by William R. Buchner on October 28, 1985.

Section 12.04 of the Plan provides:

*No Amendment to Reduce Earned Benefits.* The Employer shall not have the right to modify or amend the Plan retroactively in such a manner as to deprive any Participant or Beneficiary of any benefit to which he or she was entitled under the Plan by reason of contributions made before the amendment, unless such modification or amendment is necessary to (a) conform the Plan to or to satisfy the conditions of any law, governmental regulation or ruling, and (b) permit the Plan and the Trust to meet the requirements of Code Sections 401(a) and 501(a) or any similar statute subsequently enacted.

Section 7.02(a) of the amended Buchner Brothers Plumbing and Heating Target Benefit Pension Plan provides:

Upon the death of a Participant before his retirement date or other termination of his employment, all amounts credited to such Participant's account shall become fully vested. Upon or before the anniversary date coinciding with or next following such death, the Plan Administrator shall direct the Trustee, in accordance with the provisions of Sections 8.02 and 8.03, to distribute the value of the deceased Participant's account to the Participant's beneficiary.

Section 8.02(a) of the amended Buchner Brothers Plumbing and Heating Target Benefit Pension Plan provides "Unless otherwise elected ..., a vested Participant who dies before the annuity starting date and who has a surviving spouse shall have his death benefit paid to his surviving spouse in the form of a pre-retirement survivor annuity."

Section 8.02(b) of the amended Buchner Brothers Plumbing and Heating Target Benefit Pension Plan provides "Any election to waive the pre-retirement survivor annuity must be made by the Participant in writing during the election period and shall require the spouse's consent in the same manner provided for in Section 8.01(a)(2)."

Section 8.01(a)(2) of the amended Buchner Brothers Plumbing and Heating Target Benefit Penson Plan provides "Any election to waive the ... annuity must be made by the Participant in writing during the election period and be consented to by the Participant's spouse."

A notice concerning the pre-retirement survivor annuity requirement was sent by McPhail Associates, Inc. to Buchner Brothers on February 26, 1985.

Gerald Buchner died on May 28, 1985.

At the time of his death, Gerald Buchner was married to the plaintiff Irma Buchner.

Plaintiff has not waived her rights to the pre-retirement survivor annuity provided for in Section 7.02(a) of the Plan.

Through her attorney plaintiff Irma Buchner contacted the Plan Administrator on April 28, 1987 concerning the pre-retirement survivor annuity.

On May 12, 1987 forms concerning the application for benefit were sent by the Plan Administrator to plaintiff's representative.

No other claim has been filed in accordance with Plan procedures for the account of Gerald Buchner under the Buchner Brothers Plumbing and Heating Target Benefit Pension Plan.

Under the Buchner Brothers Retirement Trust, the Plan Administrator is to make a decision on an application for benefits within 90 days of receipt unless written notification is sent to the applicant that an additional 90 day period will be required. All claims must be determined within 180 days.

The Plan Administrator made no response to the application for benefits filed on May 18, 1987.

Since plaintiff had not received a response to her application, she treated her claim as denied and on August 27, 1987 and October 7, 1987 wrote the Plan Administration Committee to obtain the necessary forms to request a review of the denial.

On December 4, 1987, in accordance with Plan procedures, plaintiff filed an appeal with the Plan Administrator.

Section 6.03 of the amended Buchner Brothers Retirement Trust Agreement provides:

The Trustee shall make a full and fair review of the record, including the written and oral information submitted by the claimant and within sixty (60) days of the Plan Administrator's receipt of the claimant's request for review, render its written opinion granting or denying the claim, including any modification of its previous action. If more time is required for a special case, the Plan may have up to an additional sixty (60) days in which to make a ruling. However, the claimant must be notified in writing before the termination of the initial sixty (60) day period of the need for additional time, the special circumstances which require additional time and the date by which the Plan expects to render a final decision, which date shall be as soon as reasonably possible.

Neither the Trustee nor the Plan Administrator, during the 60 day initial review period wrote plaintiff requesting additional time to decide the appeal.

Under the Plan Trust Agreement, the Plan Administrator has the responsibility to interpret the Plan.

Under the Plan Trust Agreement, the Plan Administrator is to initially decide all claims for benefits under the Plan.

Under the Plan Trust Agreement, the Trustee is to decide all appeals of denied claims.

Beyond the 60 day period provided in the Trust, the Trustee held a hearing on March 21, 1988.

After the hearing the Trustee did not rule on plaintiff's appeal but instead referred the matter for decision to the Probate Court of La Crosse County, Wisconsin.

Section 13.04 of the Plan provides:

If a dispute arises as to the proper amount or recipient of any payment of benefits or delivery of any life insurance contracts, the Trustee, in the Trustee's sole discretion, may withhold or cause to be withheld such payment or delivery until the dispute shall have been settled by the parties concerned, or shall have been determined by arbitration pursuant to § 6 of the Trust, or the Trustee may deposit such funds or property with a court of competent jurisdiction in an interpleader action.

Plaintiff filed this action on May 23, 1988 and pursuant to the preliminary pre-trial conference held July 15, 1988 amended her complaint on July 20, 1988, adding a third cause of action alleging breach of fiduciary duty.

Defendants have appeared in this action by filing an answer, which answer was amended on July 6, 1988.

Plaintiff objected to the jurisdiction of the Probate Court both by motion to dismiss and by objection at the June 30, 1988 hearing in the Probate Court.

The Probate Court took jurisdiction over plaintiff's objections and awarded the death benefit equally to plaintiff Irma Buchner and the children of the deceased participant.

Plaintiff's counsel by letter waived any immediate payment of benefits to plaintiff pending litigation.

On July 12, 1988, the Circuit Court for La Crosse County, Probate branch, ordered that 50 percent of the Plan proceeds are to be paid to plaintiff and the other 50 percent distributed to decedent's estate according to the beneficiary designation made by decedent.

The order of the Probate Court of La Crosse County dividing the death benefit under the Plan is on appeal by plaintiff to the Wisconsin Court of Appeals.

There being no dispute as to any material finding of fact, this case is ready for decision as a matter of law.

## APPLICABLE LAW

The primary controversy in this action concerns the effect of the amendments made to 29 U.S.C. § 1055(a)(1) and (2) by

the Retirement Equity Act of 1984, Pub.L. No. 98–397, 98 Stat. 1426 (1984). The amendment became effective on August 23, 1984. The purpose of the "Act" was to provide protection to the spouses of participants in qualified retirement plans. A "Qualified Pre-retirement Survival Annuity" (QPSA) was established for those spouses surviving a plan member who died prior to retirement:

> Each pension plan to which this section applies shall provide that (1) in the case of a vested participant who does not die before the annuity starting date, the accrued benefit payable to such participant shall be provided in the form of a qualified joint and survivor annuity, and (2) in the case of a vested participant who dies before the annuity starting date and who has a surviving spouse, a qualified pre-retirement survivor annuity shall be provided to the surviving spouse of such participant.

29 U.S.C.A. § 1055(a)(1) and (2).

The QPSA is automatic unless the participant waives the pre-retirement survivor annuity coverage and the participating spouse consents in writing to this election.

Transitional rules were provided by the Act for those persons dying after August 23, 1984, and before the first day of the plan year to which the amendments would apply, which in this case is January 1, 1985. These rules provide that the amendment "shall be treated as in effect as of the time of such participant's death." Pub.L. No. 98–397, Title VII, § 303(c), 98 Stat. 1451 (1984).

Section 1132(e)(1) of ERISA provides for concurrent jurisdiction in those actions for benefits under § 1132(a)(1)(B):

> **Jurisdiction.** (1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this title brought by the Secretary or by a participant, beneficiary, or fiduciary. State courts of competent jurisdiction and district courts of the United States shall have concurrent

jurisdiction of actions under subsection (a)(1)(B) of this section.

29 U.S.C. § 1132(e)(1).

> **Persons empowered to bring a civil action.** A civil action may be brought—
>
> (1) by a participant or beneficiary—
>
> \* \* \* \* \* \*
>
> (b) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

29 U.S.C. § 1132(a)(1)(B).

## OPINION

Plaintiff contends that William Buchner's failure to act on the claim and referral to the probate court resulted in an arbitrary and capricious denial of the QPSA benefit which would have been provided if the plan amendment had been given full retroactive effect. Plaintiff asserts such retroactive effect is mandatory. She further contends that Buchner's failure to implement the claims procedure within time limitations set forth in the trust agreement and his further decision to refer the matter to the Probate Division of the La Crosse County Circuit Court constitute a breach of fiduciary duty.

Defendants assert that distribution of benefits to the plaintiff without court determination of the complex legal issue concerning the effectiveness of Gerald Buchner's express beneficiary designation, in light of the statutory changes and the defendants' attempt to retroactively amend the plan following the decedent's death to bring it into compliance with the new statutory requirements, would have precipitated legal action from the decedent's children. Defendants further assert that the Probate Court's decision allocating benefits is *res judicata* on the issue and a defense to the plaintiff's action for breach of fiduciary duty. Defendant alleges plaintiff's action is frivolous and requests an award of reasonable attorney's fees.

Plaintiff pursues a claim for breach of fiduciary duty under 29 U.S.C. § 1109, an action arising from the handling and disposition of claims which has been explicitly

prohibited by Seventh Circuit decision. *See Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 210 (7th Cir.1985). In support of this poorly chosen claim plaintiff cites *Russell v. Massachusetts Mutual Life Insurance Company*, 722 F.2d 482 (9th Cir.1983), a case which was overruled by the Supreme Court, as specifically pointed out in *Pokratz:*

> Pokratz complains not only about the denial of benefits but also about the extended nature of the process.... The complaint alleges that employees of Jones Dairy Farm discouraged his application and made things difficult for him. For example, he alleges, he asked for an application for benefits in December 1980 but was not given one until December 1981. Pokratz maintains that those administering the Plan violated their fiduciary duties to him and acted in bad faith, for which he seeks a separate recovery. The argument about bad faith acts and general delay could take two forms. The first, which Pokratz pursued specifically, is that § 409 of ERISA, 29 U.S.C. § 1109, generally authorizes the beneficiary of a plan to recover from the plan's fiduciary actual and punitive damages for mental distress or other injuries inflicted in the course of passing on applications for benefits. Pokratz tells us that "the answer to this question ... depends on whether this Circuit adopts or rejects the position of the Ninth Circuit Court of Appeals in *Russell v. Massachusetts Mutual Life Insurance Co.*, 722 F.2d 482 (9th Cir. 1983)." The Supreme Court has reversed *Russell, see Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), holding that § 409 does not authorize awards to beneficiaries. It is, the Court held, limited to suits by a plan against an offending fiduciary.

*Pokratz v. Jones Dairy Farm*, 771 F.2d at 210.

The *Pokratz* court recognized that a claim for benefits wrongfully denied may be available under § 502 of ERISA, 29 U.S.C. § 1132:

> A suit seeking benefits wrongfully withheld because of delay by a plan's admin-

istrator is not forclosed [sic] by the Supreme Court's decision in *Russell.* The beneficiary in *Russell* had received all benefits to which she was contractually entitled (see 105 S.Ct. at 3087). The Court therefore did not address the scope of entitlement under § 502(a)(1)(B), which authorizes a beneficiary's suit "to recover benefits due to him under the terms. of his plan [and] to enforce his rights under the terms of the plan."

*Id.*

■ Viewing plaintiff's claim solely as one arising under § 1132, any delay in processing the plaintiff's claim for benefits must be judged against the "arbitrary and capricious" standard set forth in *Van Boxel v. Journal Company Employees Pension Trust*, 836 F.2d 1048 (7th Cir.1987). In *Van Boxel* the arbitrary and capricious standard in ERISA cases was exhaustively examined. Noting arguments for a bifurcated standard in reviewing decisions by pension fund trustees, the court observed:

> Transposed to the ERISA setting, the arbitrary and capricious standard may be inapt, a historical mistake, or a mechanical extrapolation from different settings, at once too lax and too stringent, but even if it is any or all of these things it is saved from doing serous harm by its vagueness and elasticity.

> \* \* \* \* \* \*

> The fundamental difference in the depth or penetration or exactingness of judicial review is between deferential and nondeferential review, that is, between reversing a tribunal's decision because it is unreasonable and reversing it merely because it is wrong. Sometimes even this difference blurs. When the members of the tribunal—for example, the trustees of a pension plan—have a serious conflict of interest, the proper deference to give their decisions may be slight, even zero; the decision if wrong may be unreasonable. The less likely it is that the trustees' judgment was impaired by their having a stake, however indirect, in the outcome, the less inclined a reviewing court

will be to override their judgment unless strongly convinced that they erred.

\*   \*   \*   \*   \*   \*

There may be in effect a sliding scale of judicial review of trustees' decisions ... more penetrating the greater is the suspicion of partiality, less penetrating the smaller that suspicion is.

\*   \*   \*   \*   \*   \*

Where, as in *Allen* and *Pokratz*, the claimant does not argue or is unable to show that the trustees had a significant conflict of interest, we reverse the denial of benefits only if the denial is completely unreasonable. The greater the conflict of interest of a majority of the trustees, the less we defer to a denial of benefits that appears to be wrong.

*Id.*, 836 F.2d at 1052, 1053.

In this case the plaintiff has not shown that the Trustee has any bias against her. In fact, plaintiff has not attempted to demonstrate any partiality or conflict of interest on the part of the Trustee. The arbitrary and capricious standard is applicable to this case.

■ The uncontested facts demonstrate that the Trustee's action which resulted in an award of plaintiff's entitlement to 50 percent of the QPSA was not "completely unreasonable." Although there were significant delays in processing plaintiff's claim, contrary to 29 C.F.R. 2560.301–1 and the express terms of the plan, the Trustee, a plumber by trade, was faced with making a decision which included a very difficult question of law. The Trustee's decision to have the question judicially determined was reasonable in light of his inexperience.

Although it is disputed whether Irma Buchner and the children of her late husband were engaged in negotiations which delayed the Trustee's proceedings, the Court can determine as a matter of law that the Trustee's actions did not lead to an arbitrary and capricious denial of benefits.

This Court believes that the decision made by the Probate Court on the award of benefits was the correct one. The fact that the Trustee sought to have the question settled by that court in a form of action other than the interpleader authorized by the plan does not render his decision "completely unreasonable."

Whether the Probate Court decision is *res judicata* on the issue of the proper beneficiaries and the portion to be distributed to each pales in significance given this Court's determination that the probate decision was in fact correct. However, as the issue of jurisdiction and the propriety of the Probate Court's decision are of importance to the reasonableness of the Trustee's actions, the Court will review these matters briefly.

## JURISDICTION AND RES JUDICATA

■ A state court judgment must be given the same *res judicata* effect in a federal court that it would be given in the courts of the rendering state. *Vandenplas v. City of Muskego*, 753 F.2d 555, 559 (7th Cir. 1975).

■ Where there has been a "full and fair opportunity" to litigate a claim or issue pursuant to state rules of *res judicata* and collateral estoppel a federal court must accept state rules in gauging the effect of a state court judgment. *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1982). Where the rules are the same the state court judgment will ordinarily command the same *res judicata* effect in federal court as in the state court that entered it. *Lee v. City of Peoria*, 685 F.2d 196, 198 (1982), (citing, 18 *Wright, Miller & Cooper, Federal Practice and Procedure*, § 4469 (1981)). The *res judicata* doctrine provides that a final judgment on the merits in a court of competent jurisdiction bars the same parties or their privies from relitigating the issues raised and all others which could have been raised. *Id.*, 608 F.2d at 199.

■ Wisconsin law requires that there be an identity of parties and of causes of action for the doctrine of *res judicata* to be effective in a second action. *See e.g. DePratt v. West Bend Mut. Ins. Co.*, 113 Wis.2d 306, 310, 334 N.W.2d 883 (1983).

■ Clearly, the real issue in this case concerning the distribution of the Buchner qualified retirement fund was determined by the Probate Court. This Court is of the opinion that it is equally clear that plaintiff, although not a named party in the probate action, captioned simply "In the Matter of Estate of Gerald M. Buchner," was a de facto party in the proceeding and has had a full and fair opportunity to litigate the claim.

■ Even if this Court were to accept plaintiff's argument that the initiation of the probate proceeding by the Trustee did not comport with the jurisdictional requirements of § 1132(e)(1) because no civil action was initiated by a *named* party who was a participant or beneficiary of the plan as required under § 1132(a)(1)(B), the plaintiff cannot succeed on her claim for benefits under § 1132(a)(1)(B). The Court believes that the Probate Court correctly determined that plaintiff is entitled to only 50 percent of the QPSA.

This benefit question is one of first impression in this Court. The plan amendment signed after Gerald Buchner's death and made retroactive to January 1, 1984 provided that the QPSA be paid to the spouse in full unless waived by the participant and the spouse. The amendment if effective would operate to deprive the estate of its 50 percent interest which vested at the time of Buchner's death. Section 13.04 of the plan prohibited the employer from retroactively amending the plan to deprive a beneficiary of any benefit to which the beneficiary was entitled unless such an amendment was necessary to conform the plan to law, regulation, ruling or statute. In the absence of clear statutory direction or case law this contractual provision should be followed.

The Reform Act requires only that a surviving spouse receive 50 percent of a QPSA. There is no authority for a retroactive amendment of the plan which requires a 100 percent annuity to a surviving spouse who has not waived that benefit.

District courts in Maryland and Pennsylvania have interpreted the meaning of the amendments to ERISA and the effect of the transitional rules upon those dying prior to the time their employer's were required to make amendments to their plans. While not directly on point, these cases shed light on the impact of the Act upon the decedent beneficiary designations made prior to the Act's effective date.

In *Naddeo v. Officers and Employees Pension Plan of Laundry, Dry Cleaning and Dye Workers International Union,* 637 F.Supp. 82 (E.D.Pa.1986), the plan participant died on December 24, 1984, after the effective date of the Act and prior to the first day of the plan year to which the Act amendments apply. This plan was amended retroactive to January 1, 1984, but the spousal consent provision was made effective as of January 1, 1985. The transitional rules provide that where the participant dies after passage of the Act but before the employer is required to amend its plan, the QPSA amendments are treated as if in effect at the participant's death. The QPSA amendments require that only 50 percent of the annuity go to the surviving spouse unless waived.

The district court held that the decedent's beneficiary designation could be honored, but not as to the 50 percent which the Act required a non-waiving spouse to receive. The Court observed that on the date the decedent died there was no spousal consent required to name a beneficiary other than the spouse, nor was the plan's amendment concerning spousal consent made retroactive to that date. Although the court suggested that the decedent spouse may have had a stronger claim for 100 percent of the benefits as provided by the plan amendment if her husband had died on a date to which the spousal waiver was made applicable, this is merely nonbinding and inconclusive dicta.

In *Art Builders Profit Sharing Plan v. Bosely,* 649 F.Supp. 848 (D.Maryland 1986), another transitional rules case, the court responded to the argument that the Reform Act destroyed beneficiary designations made prior to the Act without a spousal consent:

Mrs. Bosley first argues that Mr. Bosley's designation of his children as bene-

ficiaries in 1979 was nullified by the enactment of the Retirement Equity Act because that Act requires the consent of participant spouse in order for designation of any beneficiary other than the spouse to be effective. This argument is without merit. Nothing in the Act requires spousal consent to the designation of the beneficiary. All that the Act provides is that unless the spouse files a written consent not to take the pre-retirement survivor annuity, such an annuity shall be paid. There is no indication in the language of the Act or in its legislative history to demonstrate that Congress intended the absence of spousal consent to render ineffective the designation of beneficiaries other than spouses, particularly designation which were made prior to the adoption of the Act. *Id.*, 649 F.Supp. at 851.

In the same regard Gerald Buchner designated his estate as his beneficiary prior to the enactment of the Act. His death occurred after his employer was required to pay at least 50 percent of a QPSA to his widow unless she consented to receive less than that amount. The plan amendment which provided that a non-waiving spouse be entitled to 100 percent of the annuity was not yet effective on the date of death. Retroactive amendment of the plan which would grant plaintiff 100 percent of the QPSA would divest the estate of the 50 percent share which had been vested on the date of the decedent's death. This would be granting the plaintiff more than the law required for a period where the transitional rules had lapsed, and would violate the plan requirement that no vested right be divested by retroactive amendment of its provisions.

Fairness dictates a decision which comports with the express requirements of the Act, legislative intent, and the contract provisions of the plan. 50 percent of the QPSA will be paid to the spouse and 50 percent to the estate, the beneficiary designated by decedent.

There is no basis for an award of attorneys fees under ERISA, 29 U.S.C. § 1132(g) to the plaintiff. Nor have defendants established that plaintiff's lawsuit is so frivolous as to merit an award of attorneys fees.

Accordingly,

## ORDER

IT IS ORDERED that defendants' motion for summary judgment is GRANTED insofar as it seeks judgment in favor of defendants.

IT IS FURTHER ORDERED that all other motions are DENIED.

IT IS FURTHER ORDERED that judgment be entered DISMISSING plaintiff's complaint in its entirety, with prejudice and costs.