John **POKRATZ**, Plaintiff-Appellant, Cross-Appellee,

v.

**JONES DAIRY FARM**, et al., Defendants-Appellees, Cross-Appellants.

Nos. 84–3092, 84–3169.

United States Court of Appeals, Seventh Circuit.

Argued, June 11, 1985.

Decided Aug. 15, 1985.

would comprise the reprehensible constitutional violations that Congress intended Section 1983 to redress.

John S. Williamson, Jr., Habush, Habush & Davis, Milwaukee, Wis., for plaintiff-appellant, cross-appellee.

Michael H. Auen, Foley & Lardner, Madison, Wis., for defendants-appellees, cross-appellants.

Before COFFEY and EASTERBROOK, Circuit Judges, and GRANT, Senior District Judge [*].

EASTERBROOK, Circuit Judge.

The pension plan of Jones Dairy Farm's unionized employees (the Plan) provides benefits to disabled employees. John Pokratz sought disability benefits after he became legally blind. The Plan turned him down. His appeal presents questions about the interaction of state and federal law as well as the propriety of the conclusion that he is not disabled.

I

Jones Dairy Farm employed Pokratz from 1967 to 1983. He did clean-up work on the night shift. Pokratz has retinitis pigmentosa, a progressive disease of the eyes. The disease restricts the field of vision and ends in blindness. By January 1983 Pokratz could recognize only light and not shapes in his right eye. His vision in the left eye was 20/20, but his field of vision was 10 degrees, making it difficult for him to work and hazardous to perform tasks requiring peripheral vision or depth perception.

Pokratz has not worked regularly since June 1980, when he was hospitalized for depression. He formally sought disability benefits from the Plan in December 1981. There is a dispute about whether he tried to apply earlier. He also sought disability benefits under the Social Security disability system, 42 U.S.C. § 423, and his application was granted.

The Plan provides benefits for permanent total disability but not for temporary or partial disability. The pertinent provision states that "permanent" means six months or more and that "total disability" is "a disability ... [that is] the result of a bodily or mental injury or disease that has so permanently and totally disabled an Em-

---

* The Honorable Robert A. Grant of the Northern District of Indiana is sitting by designation.

ployee as to prevent him from engaging in any occupation or employment for remuneration or profit."

Pokratz was sent to Opportunities, Inc., a rehabilitation service, for an evaluation of his ability to work. He spent a total of 15 days there, performing a variety of tasks under guidance and observation. The report of Opportunities, Inc. concluded that Pokratz is in general good health and has good work habits, which "along with previous work experience [gives] him a lot of potential for competitive employment.... It seems that some sort of routine farm jobs such as a milking parlor or in a packaging-shipping/receiving department would be appropriate." Opportunities, Inc. observed, however, that Pokratz was depressed and uncommunicative much of the time and ran into trouble because he would not discuss problems in his work or cooperate with others. The report recommended treatment for this condition and concluded that Pokratz's mental problem was more serious than the vision problem.

The Plan denied the request for benefits in December 1982, concluding on the basis of this report that Pokratz could work. The Plan's decision said in part: "The fact that you have been employed for a number of months by Poyer Orchards, have had job training opportunities, and have had other employment placement opportunities available to you indicates that your general health does not preclude you from gainful employment."

Pokratz submitted new medical evidence in January 1983 about the extent of his vision problem, and the Plan treated this as a renewed request for benefits. It sent Pokratz for a new vocational evaluation, this time by Crawford Rehabilitation Services. Crawford concluded that Pokratz could function as a kitchen helper, packager, orchard worker, or assembler—all jobs in well lighted areas where Pokratz's remaining vision would suffice. Crawford, like Opportunities, found Pokratz's mental problems the only serious obstacle; the report observed that Pokratz was uncooperative and concluded that he "has invested in presenting himself as a disabled individual and has placed most of his effort into obtaining disability benefits." The report concluded that should "Pokratz's behavorial liabilities be attributed to a psychiatric disability as opposed to a lack of motivation to pursue employment" he should be treated as disabled.

The next stop was the office of Francis Millen, a psychiatrist. Dr. Millen concluded that Pokratz could work if motivated to cooperate, and that although Pokratz had an "affective disorder in the form of depression" this had no organic source. Although Dr. Millen did not find Pokratz mentally ill, he surmised that Pokratz had a "probable lifelong history of adjustment difficulty and defective coping mechanisms, present since early childhood." After receiving the reports of Crawford and Dr. Millen, the Plan again denied Pokratz's claim, informing him that "there is work which you could perform for remuneration if you were so motivated." After some further proceedings, and a renewed denial of benefits, Pokratz filed this suit under Sections 409 and 502 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1109, 1132.

The district court granted summary judgment to the defendants. 597 F.Supp. 326 (W.D.Wisc.1984). The court found the denial of benefits to be neither arbitrary nor capricious. This disposed of the claim under ERISA, the court thought; to the extent the complaint was based on state law, the court dismissed the complaint without prejudice so that Pokratz could file anew in state court.

## II

A Plan's denial of disability benefits may not be disturbed under ERISA unless the action was arbitrary or capricious. *Wardle v. Central States Pension Fund,* 627 F.2d 820, 824 (7th Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981); *Anderson v. Ciba-Geigy Corp.,* 759 F.2d 1518 (11th Cir.1985). When the decisionmaker makes an effort to decide according to the evidence and the

legal rules, the result satisfies this legal test whether or not the decision is the one a court would have made. A decision is arbitrary or capricious when the decisionmaker "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence . . ., or is so implausible that it could not be ascribed to a difference in view or the product of . . . expertise." *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983).

The "arbitrary or capricious" standard calls for less searching inquiry than the "substantial evidence" standard that applies to Social Security disability cases. Although it is an overstatement to say that a decision is not arbitrary or capricious whenever a court can review the reasons stated for the decision without a loud guffaw, it is not much of an overstatement. The arbitrary or capricious standard is the least demanding form of judicial review of administrative action. Any questions of judgment are left to the agency, or here to the administrator of the Plan. *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285–86, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974); *cf. Center for Auto Safety v. Peck*, 751 F.2d 1336, 1342–43 (D.C.Cir.1985). Before condemning a decision as arbitrary or capricious a court must be very confident that the decisionmaker overlooked something important or seriously erred in appreciating the significance of the evidence.

We agree with the district court that the denial of disability benefits was not arbitrary or capricious. All agree that Pokratz can see enough to work at some jobs. He simply lacks the will to do so. He portrays the cause of this as "depression," a condition beyond his control and within the terms of the Plan (which refers to a "bodily or mental injury"). The Plan portrays Pokratz as a malingerer, more interested in securing disability benefits than in overcoming his physical handicap.

As is so often the case, it is possible to attach two characterizations to the same observations. Some aspects of Pokratz's history support a characterization of "mental injury" within the terms of the Plan, some of simple lack of motivation. There has been a long-running debate in the medical profession, a debate also carried on in judicial opinions about the insanity defense, concerning the difference (if there is a difference) between mental diseases over which people lack control and mental conditions that are subject to self-control. No one has found a bright line between the two or any easy way to tell one from the other.

■ Because disability under the Plan, as under the Social Security Act, is an all-or-nothing decision, the characterization of ambiguous symptoms of conditions that are themselves poorly understood leads to decisions that are arbitrary in the sense that a rational person could come out either way. See *Stephens v. Heckler*, 766 F.2d 284 (7th Cir.1985). Indeed, the Social Security Administration *did* come out the other way, finding Pokratz "disabled" under a statutory definition that, like the Plan, equates "disability" with inability to perform any kind of "substantial gainful work which exists in the national economy" (42 U.S.C. § 423(d)(2)(A)). But this is not the sense of "arbitrary" that is important for judicial review. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious.

■ Dr. Millen believed that Pokratz had had difficulties in adjusting his entire life. Yet Pokratz had been employed for more than 20 years by Jones Dairy Farm and others. He was able to work for years as his eyesight became worse; even after becoming legally blind he worked at Poyer Orchards and demonstrated to two vocational services that he could carry out tasks. The Plan's conclusion that Pokratz can work if he wishes is not arbitrary or capricious.

### III

Pokratz complains not only about the denial of benefits but also about the extended nature of the process. He stopped regular work in June 1980, and the Plan did not formally deny his request for benefits until December 1982. The denial that the district court reviewed came in December 1983. The complaint alleges that employees of Jones Dairy Farm discouraged his application and made things difficult for him. For example, he alleges, he asked for an application for benefits in December 1980 but was not given one until December 1981. Pokratz maintains that those administering the Plan violated their fiduciary duties to him and acted in bad faith, for which he seeks a separate recovery.

■ The argument about bad faith acts and general delay could take two forms. The first, which Pokratz pursues specifically, is that § 409 of ERISA, 29 U.S.C. § 1109, generally authorizes the beneficiary of a plan to recover from the plan's fiduciary actual and punitive damages for mental distress or other injuries inflicted in the course of passing on applications for benefits. Pokratz tells us that "the answer to this question ... depends on whether this Circuit adopts or rejects the position of the Ninth Circuit Court of Appeals in *Russell v. Massachusetts Mutual Life Insurance Co.*, 722 F.2d 482 (9th Cir.1983)." The Supreme Court has reversed *Russell*, see *Massachusetts Mutual Life Insurance Co. v. Russell*, — U.S. —, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), holding that § 409 does not authorize awards to beneficiaries. It is, the Court held, limited to suits by a plan against an offending fiduciary. Suits by the beneficiary must be brought under § 502. Pokratz therefore cannot obtain punitive damages or damages for emotional injury under § 409. Pokratz has not suggested any other source of entitlement to extra-contractual damages (*cf. Russell*, 105 S.Ct. at 3089 n. 5), and we therefore agree with the district court that he is entitled to none.

The second possible argument is that the delay prevented Pokratz from obtaining disability benefits to which he was entitled. He claims that he should have been evaluated and found eligible no later than April 1, 1981, when his sick leave ran out. Pokratz claims to have made his desire for disability benefits known in December 1980. Had he been evaluated then, he might have been found permanently and totally disabled within the meaning of the Plan. After all, the Plan defines disability as total inability to work that lasts or is expected to last for six months. The state of affairs in 1980 might have led a reasonable person to find Pokratz disabled, subject to reassessment if his mental condition improved.

A suit seeking benefits wrongfully withheld because of delay by a plan's administrator is not forclosed by the Supreme Court's decision in *Russell*. The beneficiary in *Russell* had received all benefits to which she was contractually entitled (see 105 S.Ct. at 3087). The Court therefore did not address the scope of entitlement under § 502(a)(1)(B), which authorizes a beneficiary's suit "to recover benefits due to him under the terms of his plan [and] to enforce his rights under the terms of the plan."

■ The complaint, filed before the Supreme Court's decision in *Russell*, did not separate the distinct statutory sources of entitlement to relief. The district court, too, did not distinguish between a claim under § 409 for punitive and consequential damages and a claim under § 502 for monthly disability payments for 1980 through 1982. Pokratz should have an opportunity to establish under § 502 that the Plan was required to grant him benefits for these years. This will be a hard task. He must show that the Plan unreasonably discouraged him from applying and then postponed acting on the request; he must also show that if the Plan had acted in early 1981 he would have received benefits. The gain might be small, for the decision to deny benefits in 1983 (which we have sustained) establishes that he was not then disabled. But beneficiaries of pension plans may seek such relief under § 502.

## IV

After holding that the denial of benefits in 1983 was not arbitrary, the district court concluded that Pokratz should be permitted to pursue in state court any remedies he may have for the bad faith conduct of the Plan and its administrators. The court therefore designated its dismissal of the second and third claims of the complaint as without prejudice. But the complaint did not set out any claim under state law, and Pokratz did not attempt to invoke the district court's pendent jurisdiction. In this court Pokratz and the defendants agree that ERISA preempts all state laws that might provide any remedy for the bad faith decisions of the administrators of pension plans.

Because Pokratz does not request any remedy under state law and did not seek a dismissal without prejudice, and because the parties have not joined issue on the subject in this court, it would be inappropriate for us to discuss the matter further. This question does not present a concrete controversy; any opinion we have would be advisory. The district court likewise should not have ventured an opinion on the remedies, if any, that may be open to Pokratz under state law. Having resolved all claims raised in the complaint, the district court should have entered judgment for the defendants. The district court's comments on possible state law remedies were advisory views on a difficult and unresolved question. See *Allis-Chalmers Corp. v. Lueck,* — U.S. ——, 105 S.Ct. 1904, 1911–12 & n. 6, 1916, 85 L.Ed.2d 206 (1985), which leaves open all questions about the application of ERISA's preemption clauses to Wisconsin's common law of good faith in the administration of disability plans. We do not resolve the questions here. *Cf. Russell, supra,* 105 S.Ct. at 3088 n. 4 (not reaching preemption); *Metropolitan Life Insurance Co. v. Massachusetts,* 105 S.Ct. 2380 (1985) (a savings clause prevents preemption of certain state laws regulating insurance in connection with employee benefit plans); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

The judgment of the district court is affirmed to the extent it deals with the denial of benefits in 1983. The remainder of the judgment is vacated, and the case is remanded for further proceedings consistent with the Supreme Court's opinion in *Russell* and with this opinion. The parties shall bear their own costs in this court.