699 F.Supp. 1367 (1988)
Delvina E. LORENZEN, Plaintiff,
v.
EMPLOYEES RETIREMENT PLAN OF the SPERRY AND HUTCHINSON COMPANY, INC. a/k/a Employees Retirement Plan of the S & H Group, Inc. and S & H Group, Inc., Defendants.
Civ. A. No. 88-C-50.
United States District Court, E.D. Wisconsin.
November 29, 1988.
*1368 James W. Hammes, Cramer, Multhauf & Curran, Waukesha, Wis., for plaintiff.
Paul E. Prentiss, Michael, Best & Friedrich, Milwaukee, Wis., for defendants.

DECISION AND ORDER
TERENCE T. EVANS, District Judge.
Proving perhaps, as Thomas Mann wrote, that a man's dying is more the survivors' affair than his own, this unfortunate case, brought by the widow of Warren Lorenzen, shows how important it is to die at the right time.
This case, under a pension plan governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq., was originally filed in the circuit court for Waukesha County, Wisconsin. It was properly removed to this court by the defendants. Cross-motions for summary judgment are pending.
The facts, which are undisputed, show that Delvina E. Lorenzen is the widow of Warren Lorenzen, a 37-year employee of The Sperry and Hutchinson Company, Inc. Mr. Lorenzen began his employment with S & H in 1950 and worked past his retirement age until his death on June 27, 1987.
The S & H employees' retirement plan provides benefits to participants in the plan and their beneficiaries who meet the various eligibility requirements. A retirement benefit is payable to eligible participants who retire from active service during the calendar month coincident with or following their 65th birthday or on the first day of any month thereafter. Because he was born on January 19, 1922, Mr. Lorenzen's normal retirement date would have been February 1, 1987. Mr. Lorenzen, however, remained on the job at the request of his colleagues to see a new project to its completion. He postponed his retirement to June 30, 1987.
Pursuant to his request, Mr. Lorenzen's accrued retirement benefit was calculated as a single cash lump sum equal to the actuarial equivalent of his accrued benefit as of his postponed retirement date. He elected to receive his benefits in a lump sum. Before he could choose the lump sum method, S & H required that he contact a tax accountant concerning the tax consequences of a lump sum payment. Also, in order to choose a lump sum payment, he needed to obtain the consent of his wife, Delvina Lorenzen. She executed a spousal consent form provided to her by S & H.
Had Warren Lorenzen survived to his postponed retirement date, his lump sum payment would have been $191,730.10. However, on June 15, 1987, he suffered cardiac arrest. His life was being indefinitely sustained by life-support system. On June 27, 1987, three days prior to the date upon which he was to receive his benefit payment of $191,730.10, his physicians advised his wife that she should request that the life-support system be disconnected. She made that request, and shortly thereafter Mr. Lorenzen died.
*1369 Because he died three days prior to his postponed retirement date, the benefits payable under the plan to his beneficiary were calculated under provisions governing preretirement death benefits. Under those calculations, S & H states that Mrs. Lorenzen is to receive $88,561.26.
In its motion for summary judgment, the Plan argues that the decision of the trustees regarding the amount of the payment is compelled by the undisputed facts and the language of the plan itself; the decision is therefore not arbitrary or capricious and must not be disturbed. Mrs. Lorenzen, on the other hand, argues that she is entitled to summary judgment awarding her the lump sum payment her husband was entitled to. She contends that neither the plan language nor the spousal consent form adequately informed her of the possible effects of her consent, in violation of 29 U.S.C. § 1055(c)(3)(A). She further contends that the plan is contrary to the intention of Congress in protecting surviving spouses and that the court has power to fashion an equitable remedy to keep within the purpose and intent of ERISA.
In examining a decision of a plan administrator, the court's role is to determine whether the decision is arbitrary and capricious. If not, the decision will be sustained. The arbitrary and capricious standard is the least demanding form of judicial review. In Pokratz v. Jones Dairy Farm, 771 F.2d 206, 209 (7th Cir.1985), the court stated:
Although it is an overstatement to say that a decision is not arbitrary or capricious whenever a court can review the reasons stated for the decision without a loud guffaw, it is not much of an overstatement.
Upon looking at this case, I certainly do not guffaw. I do, however, gasp, and for purposes of a legal standard, a gasp is as good as a guffaw.
Apparently, according to the affidavit of Huel G. Wheeler, Benefits Supervisor, the final decision of the plan administrators is that Delvina Lorenzen is entitled to a lump sum payment of $88,561.26. By letter dated July 13, 1987, Wheeler had originally informed Lorenzen that she was entitled to either a $863.84 monthly benefit or a lump sum payment of $90,421.05.
Mrs. Lorenzen argues that the decision of the administrators is arbitrary and capricious because the spousal consent form, which she signed, does not comply with the requirements of ERISA. Under 29 U.S.C. § 1055(b)(1)(C)(i), the consent must be in writing, the beneficiary must be designated, the consent must acknowledge the effect of the participant's election of certain benefits, and the spouse's signature must be notarized. The consent form which Delvina Lorenzen signed does not say anything whatsoever about the effect of the election of a lump sum payment on her benefits should her husband die before the payment is made.
I believe that the effect of the lump sum payment, especially when a particularly adverse result can occur, should have been made clear to the Lorenzens. However, the consent form may not be the only place for the information.
The election of a lump sum payment affects retirement benefits, not pre-retirement death benefits. If Warren Lorenzen had not elected to receive a lump sum payment and had made no other election, upon retirement his benefits would have been calculated under section 4.6.3 of the plan, "Option 2Joint and Survivor." That means that upon his retirement, he would have received a monthly payment; upon his death after his retirement, his wife would have received 50% of that payment. What Delvina Lorenzen did by signing the consent form was to make it possible for her husband to receive a lump sum, rather than monthly payments. She then gave up her right to survivor's monthly retirement payments as well. While it is true that the spousal consent form she signed did not, as required by ERISA, point out the effect of her consent, that is not the major problem here.
Before I proceed to that problem, however, I must indicate that my conclusion that Warren Lorenzen would have received benefits under option 2 (joint and survivor benefits) comes from my reading of *1370 ERISA, the summary plan description, and the plan (materials not always consistent with one another). 29 U.S.C. § 1055(a) as well as Internal Revenue statutes, 26 U.S. C. §§ 401(a)(11) and 417(c) require the joint and survivor method of calculation. The plan summary states clearly that this is the method which will be used.[1] The plan itself, however, states that "[i]n lieu of the Standard Form of payment [the "Five Years Certain and Continuous" form], a Member may elect ... to receive" a joint and survivor payment." In requiring an election to receive joint and survivor payments, the plan seems not to comply with ERISA. In his affidavit, Huel G. Wheeler, Benefits Supervisor, states that the "5 year certain and continuous form of payment is the normal form of benefit payment in the retirement plan." Despite what Mr. Wheeler says, however, assuming that the plan was to be administered according to the law, the calculation for married persons would have been made under provisions for joint and survivor benefits, not the five year plan.
Back to the problem. The cause of what seems to be a very unfortunate result in this case is not that Delvina Lorenzen consented to a lump sum payment over joint and survivor benefits but that she was not aware that the lump sum payment would not be made unless her husband lived to retire. It is impossible to know what Warren Lorenzen knew on that point. It is clear that none of the letters he received provided him with the information. The letters reveal, however, that Huel Wheeler felt some obligation to ensure that Mr. Lorenzen understood another ramification of a decision to choose a lump sum payment: he was required to consult with a tax accountant before making his choice. Yet neither the letters nor the spousal consent form gave any warning that the lump sum payment would be paid only if Mr. Lorenzen lived to his retirement date. This is a poignant situation both because Mr. Lorenzen, apparently out of some loyalty to the company, worked past his normal retirement date, and because his life in all probability could have been sustained until his postponed retirement date.
In this situation, certain of defendants' arguments seem coldhearted. S & H argues that by calling a toll-free number, Mrs. Lorenzen could have found out that she would not collect the lump sum payment if her husband died before retirement. Perhaps. But a woman confronted with a decision to remove her husband from life-support systems probably was not thinking about calling a benefits supervisor, toll free or not.
In light of the confusion over the calculation of benefits, defendants' statement regarding the plan summary is highly questionable. After quoting from the summary plan description, defendants state: "Nothing could be plainer than this succinct summary of Plan section 4.5.1." I disagree. Surely something could be plainer.
Apparently something could be plainer as well to the people who administer the plan. As I stated above, Huel Wheeler first told Mrs. Lorenzen that she was entitled to either monthly benefits or a lump sum payment of $90,421.05. Then upon recalculation, he determined that she was entitled to a lump sum payment of $88,561.26. It is not clear to me whether the latter lump sum is an alternative to a monthly payment or not. I doubt that it is clear to Mrs. Lorenzen.
Mr. Wheeler's letter, in which he provides his first calculation of benefits, gives explanations of the benefits which seem to comply with the law and section 4.5.1 of the plan. He states:
Under this plan you are entitled to a preretirement death benefit equal to the greater of 40% of his lump sum benefit or one half of the 50% joint and survivor benefit.
Then, however, he changes his mind. He states in his affidavit:

*1371 Upon review the death benefit estimate should be revised to $88,561.26. The original death benefit estimate was estimated by applying a life annuity form of payment to a lump sum factor based on a 5 year certain and continuous form of payment. The revised figure was achieved by applying a 5 year certain and continuous form of payment to a lump sum factor based on a 5 year certain and continuous form of payment. The 5 year certain and continuous form of payment is the normal form of benefit payment in the retirement plan.
Nothing could be less plain. What's more important, the explanation given is arbitrary and capricious. It is true that the five year certain and continuous form of payment is said in the plan to be the normal form of benefit payment. However, as I discussed, the summary plan description and the law cast doubt on that interpretation as it relates to married persons. In addition, the explanation does not make clear that Mrs. Lorenzen is entitled under section 4.5.1 to the lump sum payment or to monthly payments. Her spousal consent form authorizing a lump sum payment should have no effect on pre-retirement benefits. It was applicable only to retirement benefits.
I am also convinced that a person who elects a lump sum benefit (and the spouse who agrees to the election) and then continues to work after his normal retirement day should be informed that if he dies before retirement, his wife is not entitled to the full lump sum.
Because the plan administrators acted arbitrarily in this case and because the facts of the case call out for an equitable resolution, I will order that Mrs. Lorenzen be paid the lump sum which her husband was entitled to at retirement. Had Lorenzen refused to continue to work, he would have retired prior to his death and these problems would not have arisen. Had Mrs. Lorenzen been informed that her husband had to live until he retired in order for the payment to be made, she would not, as she states in her affidavit, have agreed to remove the life-support systems. With the contradictions in the plan documents, it is extremely unfair to expect Mrs. Lorenzen to have figured out anything about her rights.
As fiduciaries, the plan administrators had a responsibility to Mr. and Mrs. Lorenzen as well as a duty to conserve the assets of the plan. Title 29, United States Code, Section 1104(a), provides in part that:
a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and 
(A) for the exclusive purpose of:
(i) providing benefits to participants and their beneficiaries;
IT IS THEREFORE ORDERED that defendants' motion for summary judgment is DENIED.
IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is GRANTED. Judgment will be entered for the plaintiff in the amount of $191,730.10.
SO ORDERED.
NOTES
[1] The summary plan description provides as follows: "If you have a spouse and do not elect another payment option, you will automatically receive your benefit according to the 50% joint and survivor option with your spouse as the contingent annuitant." Affidavit of Geoffrey R. Sutton, Exhibit C at p. 16.